UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| DONALD OWENS, | ) |
| Plaintiff, | ) Case No. 1:05-cv-733 |
| v. | ) Honorable Robert Holmes Bell |
| JOHN SIMON et al., | ) |
| Defendants. | ) |

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996) (PLRA), "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff has failed to demonstrate exhaustion of available administrative remedies, the Court will dismiss his complaint without prejudice.

### Discussion

I.  Factual allegations

Plaintiff is presently incarcerated at Southern Michigan Correctional Facility, but the events giving rise to his complaint occurred at the Carson City Correctional Facility (OTF). In his *pro se* complaint, he sues the following OTF employees: Business Manager John Simon and Cashier John Warner.

Plaintiff's action concerns the seizure of his veteran's disability benefits to pay court-ordered costs. Plaintiff is a Vietnam veteran who receives monthly disability benefits of $106.00. On November 24, 2003, the Sixth Circuit issued an order in *Owens v. Naylor*, No. 03-1055, in which plaintiff had pursued an unsuccessful appeal. The order taxed costs against plaintiff stating in part: "Upon consideration, it is ordered that costs in the amount of $155.00 are GRANTED in part. Costs are denied as to the collection procedure mentioned by the parties." While the court's order fails to disclose what collection procedure was mentioned by the parties, Plaintiff suggests that the court disapproved the use of his veteran's disability benefits to pay the court-ordered costs. When Plaintiff's veteran's disability check was deposited to his prison account on July 2, 2004, it was immediately taken as payment toward the court-ordered costs, leaving a balance owed of $47.00. Plaintiff did not receive a hearing before or after the seizure of funds from his account.

Under Michigan Department of Corrections Policy Directive, 04.02.105(T), "[a]ll funds received by a prisoner shall be used to satisfy his/her debts . . ." The policy provides for some exceptions, but they do not include protection for veteran's disability benefits. In addition, Policy Directive 04.02.107(M) provides:

> Upon receipt of a court order requiring the Department to remove funds from a prisoner's account to pay court ordered filing fees or costs, or receipt of a federal court order requiring a prisoner to pay costs, the Administrative Office shall ensure that the funds are removed from the account in accordance with this policy and MICH. DEP'T. OF CORR., Policy Directive 04.02.105 unless otherwise specifically directed by the court.

Under Policy Directive 04.02.105 a fact-finding hearing is required before funds are removed from a prisoner's institutional account, except when due to: (1) a court order directing the Department

to remove funds from a prisoner's account, (2) the prisoner's written request, or (3) an order to pay restitution issued by a hearing officer for a misconduct.

Plaintiff claims that Defendants violated 38 U.S.C. § 5301(a) by seizing money from his veteran's disability benefits check to pay court-ordered costs. Section 5301(a) provides that veteran disability payments "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary." Plaintiff further claims that he was deprived of property without a pre-deprivation hearing in violation of his due process rights. Apparently, Plaintiff did not receive a hearing because the funds removed from his account were used to pay court-ordered costs.

For relief, Plaintiff seeks compensatory damages of $10,000 and punitive damages of $12,000.

II.     Lack of exhaustion of available administrative remedies

Plaintiff has failed sufficiently to allege and show exhaustion of available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement *sua sponte. Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999).

A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his

complaint, if the decision is available. *Brown*, 139 F.3d at 1104. In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the Court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000). A prisoner also must specifically mention the involved parties in the grievance to alert the prison officials to the problems so that the prison has a chance to address the claims before they reach federal court. *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001); *Thomas v. Woolum*, 337 F.3d 720, 735 (6th Cir. 2003); *Vandiver v. Martin*, No. 02-1338, 2002 WL 31166925, at *2 (6th Cir. Sept. 27, 2002) ("The issues [plaintiff] may raise, and the defendants he may name, in his lawsuit are limited to the specific issues raised, and the specific individuals mentioned, in his grievance."). Furthermore, in order to properly exhaust Michigan Department of Corrections grievance procedures, a prisoner must raise each of his claims for the first time at Step I. *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Raising allegations against a particular defendant for the first time at Step II or III is insufficient to demonstrate exhaustion. *Id.* at 576 n.4. However, where a prisoner has set forth a claim in his Step I grievance, he may present additional factual detail at Steps II and III that clarify his allegations at Step I, as a means of justifying his appeal. *Id.* at 574.

The Michigan Department of Corrections provides a three-step prison grievance process. *See* MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ E (may grieve "alleged violations of policy or procedure or unsatisfactory conditions of confinement") (effective 12/19/03). On August 6, 2004, Plaintiff filed a Step I grievance against Accounting Supervisor Sue Deval and "clerk Jane Doe." Defendant Simon met with Plaintiff concerning his Step I grievance on August 26, 2004. During the meeting, Simon informed Plaintiff that he (Simon) had ordered Cashier

Clerk Mark Warner to use Plaintiff's veteran's benefits to partially satisfy the Sixth Circuit's order taxing costs. As the Step I respondent, Simon stated that Plaintiff's veteran's benefits were properly removed from his account pursuant to MICH. DEP'T. OF CORR., Policy Directive 04.02.105(T). In his Step II grievance appeal, Plaintiff stated in part "[o]n 8/26/04, I met with Business Manager John Simon, who informed me that he was the business manager and that he had authorized and approved Jane Doe (M. Warner) Cashier Clerk to cut a check against my VA disability check of $106.00 to pay toward the $153.00 cost . . ." In the Step II response, Warden Jones found that Plaintiff's grievance was adequately addressed at Step I. Plaintiff appealed to Step III, but never received a response.

Because Plaintiff named Defendants Simon and Warner for the first time in his Step II grievance appeal, rather than his Step I grievance, he failed to exhaust his administrative remedies against them. *See Burton*, 321 F.3d at 574. Even if Plaintiff's reference in the Step I grievance to "clerk Jane Doe" was sufficient to exhaust his claims against Defendant Warner, Plaintiff's action must be dismissed without prejudice under the "total exhaustion" rule because he failed to exhaust his claims against Defendant Simon. *See Jones Bey v. Johnson*, 407 F.3d 801 (6th Cir. 2005) (a civil rights action containing both exhausted and unexhausted claims must be dismissed for lack of total exhaustion). Plaintiff did not make any reference to Defendant Simon in his Step I grievance. Once Plaintiff learned that Simon authorized the use of his veteran disability benefits to pay the court-ordered costs, he was armed with all of the information that he needed to file a Step I grievance against Simon and was required to do so in order to exhaust his administrative remedies against Simon. *See Walton v. Bouchard*, No. 03-2458, 136 F. App'x 846, 849 (2005) (citing *Burton*, 321 F.3d at 574), *petition for cert. filed*, No. 05-7142 (Oct. 17, 2005).

It is not clear whether Plaintiff may still grieve his claims. Under the policy of the prison, complaints must be resolved expeditiously, and complaints may be rejected as untimely. *See* Policy Directive 03.02.130, ¶ G(4). The Sixth Circuit held that an inmate cannot simply claim that "he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations." *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) (citing *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). However, even if the MDOC considers a subsequent grievance to be untimely, a prisoner who has presented a grievance through one complete round of the prison process will nevertheless be deemed to have exhausted available administrative remedies as required by 42 U.S.C. § 1997e(a). *See Thomas*, 337 F.3d at 733.

Because the exhaustion requirement is no longer discretionary, but is mandatory, the Court does not have the discretion to provide a continuance in the absence of exhaustion. *See Wright*, 111 F.3d at 417. Rather, dismissal of this action without prejudice is appropriate when a prisoner has failed to show that he exhausted available administrative remedies. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Brown*, 139 F.3d at 1104; *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997). Dismissal for failing to exhaust available administrative remedies does not relieve a plaintiff from payment of the civil action filing fee. *Smeltzer v. Hook*, 235 F. Supp. 2d 736, 746 (W.D. Mich. 2002) (citing *Omar v. Lesza*, No. 97 C 5817, 1997 WL 534361, at *1 (N.D. Ill. Aug. 26, 1997)). Accordingly, the Court will dismiss Plaintiff's action without prejudice.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court will dismiss Plaintiff's action without prejudice because he has failed to show exhaustion as required by 42 U.S.C. § 1997e(a).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $255 appellate filing fee in one lump sum.

A Judgment consistent with this Opinion will be entered.


Date:    November 18, 2005              /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        CHIEF UNITED STATES DISTRICT  JUDGE